UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAY BURGESS, a Michigan resident,

    Plaintiff,

v.                                                                           Case No. 04-71644

GRUPO ANTOLIN INGENIERIA, S.A.,                    HONORABLE AVERN COHN
a Spanish corporation,

    Defendant.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I. Introduction**

This is an intellectual property case under state law invoking the Court's diversity of citizenship jurisdiction.  Plaintiff Jay Burgess (Burgess) is suing Defendant Grupo Antolin Ingenieria, S.A. (Grupo SA), a Spanish corporation, for (1) unjust enrichment, (2) misappropriation of trade secrets, (3) fraud, (4) unfair competition, and (5) equitable assignment.

Before the Court is Grupo SA's motion for partial summary judgment on Burgess' claims for misappropriation of trade secrets and unfair competition.  For the reasons that follow, the motion is GRANTED.

**II. Background**[1]

---

[1] This background is taken from the Court's decision on Grupo's motion to dismiss and the parties' summary judgment papers.  Neither party fully complied with the Court's motion practice guidelines for a motion for summary judgment.  Grupo

**A. Factual Background**

Grupo Antolin Irausa, S.A. (Grupo Irausa), is a Spanish corporation with two wholly owned subsidiaries relevant to this case: (1) Defendant Grupo SA and (2) Grupo Antolin North America (Grupo NA), which is located in Troy, Michigan.

Grupo Irausa provides automotive parts for automotive suppliers worldwide. In addition to Grupo SA and Grupo NA, Grupo Irausa owns subsidiaries in other locations around the world. Grupo NA provides engineering services; it does not manufacture any automotive parts. Grupo NA pays its employees' salaries with money from company headquarters in Spain (Grupo Irausa).

Burgess is an individual residing in Imlay City, Michigan. From at least 1996, Burgess worked for Lear Corporation as a Computer Aided Design (CAD) operator working on sun visors. On July 28, 2000, Burgess terminated his employment with Lear.

On July 31, 2000, Burgess became an employee of Grupo NA. Burgess was apparently hired by Grupo NA because of his experience with sun visors. During his interview with Grupo Vice President Jesus Tome (Tome), Burgess mentioned that he had "patentable ideas" regarding sun visors, but did not discuss any invention specifically. Upon his employment, Burgess signed a Confidentiality and Shopright Agreement in which he agreed that any rights to inventions conceived during his employ belonged to Grupo and an Ethics and Conflict of Interest Statement in which he agreed

---

substantially complied, but did not furnish a case book. Burgess failed to submit a counter-statement of disputed facts, highlight relevant portions of exhibits, or provide copies of relevant cases, all of which made resolution of this motion more difficult.

to identify any "activity, interest, or relationship" which may present a conflict of interest. Burgess identified only that he owed stock in Lear.

Burgess alleges that he conceived of ideas relating to a new way to manufacture automotive sun visors <u>while still employed by Lear</u>. Specifically, Burgess says that he designed a new snap assembly and a new slideable mirror assembly for use with automotive sun visors. Burgess says that on April 28, 2000, three months prior to his hire at Grupo, he made pencil notes of the inventions on a drawing of a sun visor Lear was then making for Honda. Burgess says that he placed the sketch in his brief case and took it home and placed it in a safe where it has been ever since.

While at Grupo NA, Burgess was assigned the task of developing new automotive visor business for Grupo SA. This began in December 2001 when Grupo was working on a sun visor for the "Epsilon" platform, as known as the GM 380, as reflected in a series of e-mails from Burgess to what is assumed were members of the sun visor team. A December 18, 2001 e-mail from Burgess entitled, "GM 380 EPSILON BUILD IN TROY JANUARY 14 THRU 18 2002," states in part: "HERE IN YOU WILL FIND A TIME LINE, FOR VISORS THAT WE WILL BUILD HERE AT TROY..." A February 15, 2002 e-mail from Burgess entitled, "CORPORATE DESIGN FOR SNAPS IN A CLAMSHELL," states:

> I WOULD LIKE THE START DESIGN OF CORPORATE SNAPS FOR A CLAMSHELL, HOW WE WILL ATTACH THE CORPORATE MIRROR PACK TO THE CLAMSHELL, AS WELL AS PROTECT FOR AN EXTENDER BLADE AND VISOR ON A STICK.

A March 15, 2002 e-mail from Burgess entitled "GM 380 EPSILON NEW DESIGN" contains a listing of design items and indicates that the design is still in a state of flux.

3

In a February 2002 e-mail from Burgess to Tome, Burgess lists 5 items as "patents," one of which is "CORPORATE SNAPS TO HOLD A CLAMSHELL CLOSED" and states that he contacted Grupo's corporate attorney, William Hanlon (Hanlon), to set up a meeting to go over patents for the five items. At that time, some, but not all of the five items, were completed designs.

In May 2002, Burgess planned a visit to a plant in Silao, Mexico, where the sun visors were to be manufactured. It is these sun visors which Burgess claim embody his invention.

Burgess says he met with Hanlon several times in May 2002 to discuss the various patent applications, and it was during one such meeting that he showed Hanlon his sketch. Burgess also says that he told Hanlon that he developed the concepts for the patent applications while still employed at Lear.

On September 29, 2002, Burgess sent an e-mail to Hanlon, stating in part that the designs for the "snaps, slid on the rod, edgefold retention of cover material to a sun visor chamshell are exclusively my designs and my inventions that I had long before was [sic] an employee of Grupo Antolin..." Apparently, while Hanlon was preparing the patent applications, there was a question of ownership. Hanlon listed Burgess as the inventor of the snap technology and the sliding rod technology and also prepared assignment documents for Burgess to assign his rights in the patents to Grupo. When Burgess refused to sign the assignments, Grupo terminated his employment.

In 2002, Burgess' invention was incorporated into a sun visor design that was sold to General Motors and Isuzu. Burgess says in the complaint that he seeks unjust enrichment damages relating to a purchase order issued by General Motors for the sun

visors placed in the Chevrolet Malibu. The purchase order issued for that sun visor was issued to another subsidiary of Grupo Irausa: Grupo Antolin Silao, S.A., the plant in Mexico that manufactures the sun visors at issue.

In total, four patents were issued which Burgess says are based on his invention.
- U.S. Patent No. 6,692,059 (the '059 Patent) was issued by the U.S. Patent and Trademark Office (USPTO) on February 17, 2004. Burgess says that the '059 Patent results from an application filed with the USPTO on October 2, 2002 that listed Burgess as the sole inventor. The '059 Patent as issued, however, lists Donald Mills as the sole inventor and Grupo SA as the assignee.

- U.S. Patent Nos. 6,698,814 (the '814 Patent) and 6,698,815 (the '815 Patent) were issued by the USPTO on March 2, 2004. Again, Burgess says that these patents resulted from applications Hanlon presented Burgess that listed Burgess as the sole inventor. The '814 Patent as issued, however, lists Donald Mills and Burgess as the inventors and Grupo SA as the assignee. The '815 Patent lists Donald Mills, Benjamin Defontaine, and Burgess as the inventors and Grupo SA as the assignee.

- A fourth patent, U.S. Patent No. 6,840,561 B2 (the '561 Patent), was issued by the USPTO on January 11, 2005. The '561 Patent lists Donald Mills and Burgess as the inventors and Grupo SA as the assignee.

Burgess says that he never gave Grupo SA the right to any interest in any invention he made prior to joining Grupo NA.

### B. Procedural Background

Burgess filed this action on April 30, 2004. Grupo SA, on October 28, 2004, filed a motion under FED. R. CIV. P. 12(b)(1) and (7) on the grounds that Grupo NA is an indispensable party which cannot be added without destroying subject-matter jurisdiction. Following a hearing and the filing of supplemental papers, the Court denied the motion. See Memorandum and Order Denying Defendant's Motion to Dismiss, filed February 17, 2005.

On January 25, 2006, Grupo SA filed the instant motion for partial summary

5

judgment on Burgess claims for misappropriation of trade secrets and unfair competition.

### III. Discussion

### A. Legal Standards

Because Grupo SA's motion raises arguments considered on a motion to dismiss and a motion for summary judgment, both legal standards are set forth below.

A Fed. R. Civ. P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n., 176 F.3d 315, 319 (6th Cir. 1999) (quoting Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)).

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving

party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).  Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion.  See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50.  Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings.  Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52).  The Court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995).  Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact.  See Anderson, 477 U.S. at 255.  Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted.  Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### B. Analysis

1. Misappropriation of Trade Secrets

Michigan law defines a trade secret as follows:

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
    (I) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
    (ii) <u>Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy</u>.

M.C.L. § 445.1092 (emphasis added).

Grupo SA says that Burgess did not treat the alleged inventions as "trade secrets" because the undisputed facts show that he did not engage in reasonable efforts to maintain their secrecy. Burgess says that he did keep his inventions secret as he kept a drawing in a safe at his home and only showed it to Hanlon. He also says that the issue of what constitutes reasonable efforts to maintain secrecy is inherently factual in nature and therefore inappropriate for summary judgment.

The Court agrees with Grupo SA. While Burgess claims he made several inventions relating to sun visors while working at Lear, the record shows that from December 2001 and well into 2002, the sun visor features Burgess claims to be trade secrets were the subject of communications with Burgess and his co-workers. Burgess also made no attempt at the time of his hire to ask that the confidentiality agreement cover his inventions or in any way indicate that he had protected inventions relating to sun visors prior to working on the program. It also appears from the various e-mail correspondences that the designs for the sun visors were in a state of active

8

development and being worked on by Burgess and others at Grupo SA.  Burgess continually shared his thoughts on the sun visor program.  Burgess' only evidence of secrecy is his allegation that he kept a pencil sketch of his ideas in a safe and disclosed them only to Hanlon.  This fact alone does not demonstrate reasonable efforts at secrecy under the circumstances, nor create a genuine issue of material fact as to secrecy.  The design of the sun visors was being developed at Grupo SA with input from Burgess and his co-workers.  Burgess' claim of secrecy is inconsistent with the work activities surrounding the development of the sun visor technology.  Despite Burgess' protestations to the contrary, the record shows that Burgess actively communicated his ideas, and sought input from others, regarding the design of the sun visors.  It is not conceivable that Burgess, who was specifically hired by Grupo SA to develop a sun visors program, would keep his inventions relating to sun visors secret while at the same time engage in serious work on the program.  It simply cannot be said that Burgess' alleged inventions are protected trade secrets.  The record does not support a finding that Burgess maintained secrecy of his inventions, but rather shows that the inventions for the sun visors came out of a corporate development program in which Burgess was a willing participant.

### 2.  Unfair Competition

Grupo SA says that Burgess does not have standing to make out a claim under the Michigan Consumer Protection Act and has not sufficiently plead a claim for common law unfair competition.  In his response, Burgess focuses only on a common law unfair competition claim; therefore, the Court assumes that Burgess is not pursuing a claim under the Michigan Consumer Protection Act.

Michigan's common law of unfair competition prohibits unfair and unethical trade practices that are harmful to one's competitors or to the general public.  See, e.g., Clairol, Inc. v. Boston Discount Center of Berkley, Inc., 608 F.2d 1114, 118 (6th Cir. 1979).  Each unfair competition case "is determined upon its own facts and relief is based upon the principles of common business integrity."  Good Housekeeping Shop v. Smitter, 254 Mich. 592, 596 (1931) (citation omitted).  "Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to his competitor."  Marion Lab., Inc. v. Michigan Pharmacal Corp., 338 F. Supp. 762, 767 (E.D. Mich. 1972), aff'd.,473 F.2d 910 (6th Cir.1973).

Burgess devotes less than one page of argument to his unfair competition claim. Burgess' argument is stated as follows:

> Grupo [SA] essentially ask [sic] the Court to rule as a matter of law that this fact situation can not be pursued as an unfair competition cause of action.  It presents no evidence of lack of confusion, either actual or probable.  Discovery is not yet complete.  Plaintiff submits that the facts of this case do lend themselves to an unfair competition cause of action under the general principles recognized by Michigan for the past century.

Burgess' response is insufficient.  As the Court understands the claim, Burgess says that Grupo SA purloined his inventions and used them to obtain patents, thereby preventing him from obtaining patents.  This allegation is no different than his misappropriation of trade secret claim.  Grupo SA's alleged conduct is not of the sort intended to embody a claim of unfair competition, but rather a misappropriation claim.

10

2:05-cv-71306-AC-DAS   Doc # 40   Filed 05/02/06   Pg 11 of 11   Pg ID 1008

<u>See Rothchild v. Ford Motor Co.</u>, 2 F. Supp. 2d 941, 550 (E.D. Mich. 1998) (dismissing unfair competition claim in patent case on the grounds that it was more appropriately characterized as a misappropriation of trade secrets claim).  Because as discussed above such a claim fails, so too does Burgess' unfair competition claim.

Burgess' claims for misappropriation of trade secrets and unfair competition are DISMISSED.  His claims for unjust enrichment, fraud, and equitable assignment continue.

SO ORDERED.

       s/Avern Cohn
       AVERN COHN
       UNITED STATES DISTRICT JUDGE

Dated:  May 2, 2006

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 2, 2006, by electronic and/or ordinary mail.

       s/Julie Owens
       Case Manager
       (313) 234-5160

11